# Exhibit F

Affidavit of Richard Slingerland, for Respondents, in Opposition to
Verified Petition Pursuant to Article 78 of the New York State Civil
Practice Law and Rules for a Judgment and Order Nullifying as Unlawful,
Arbitrary, Capricious and Ultra Vires Respondents' Summary
Termination and /or Summary Diminution of Petitioners' Benefits,
dated June 8, 2005
[pp. 29-38]

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------X
In the Matter of the Application of                              :

JOSEPH DEMASI and DOMENIC RAGNO,                                 :

                      Petitioners,     :   **AFFIDAVIT OF**
                                                                                       **RICHARD SLINGERLAND**

For a Judgment and Order Pursuant to Article 78 of the            :
CPLR,

                                                                               :   Index No.: 05-6010

                      -against-                       :   HONORABLE LESTER B. ADLER

JOSEPH BENEFICO, individually and as Chief of Police             :
of the Village of Pelham, New York, RICHARD
SLINGERLAND, individually and as Village                         :
Administrator of the Village of Pelham, New York, and
THE VILLAGE OF PELHAM, New York,                                 :

                                                   Respondents.    :
-----------------------------------------------------------------X

STATE OF NEW YORK    )
                            ) ss:
COUNTY OF WESTCHESTER  )

        RICHARD SLINGERLAND, being duly sworn, deposes and says:

        1.     I am the Village Administrator for Respondent, Village of Pelham, and have been at all times relevant to the instant Article 78 proceeding.

        2.     This Affidavit is submitted in support of the Answer on behalf of the Respondents.

        3.     This Affidavit will separately address the claims of Police Officers Ragno and DeMasi, because the factual circumstances of their claims under General Municipal Law § 207-c are factually different.

### DOMENIC RAGNO

4. Petitioner Ragno is employed as a police officer in the Village of Pelham Police Department (hereinafter referred to as the "Department"). He has been employed since his appointment as a police officer effective January 29, 1996.

5. On or about January 19, 1999, Officer Ragno suffered an injury to his left wrist while on duty. Officer Ragno was out of work until April 6, 2000, when he returned to work on desk duty. Commencing on or about January 28, 2003, he was again absent due to his wrist injury (except for a few tours in July of that year) and stayed out of work almost continuously until May of 2004, when he began working again on an intermittent basis.

6. On November 5, 2004, Chief Benefico wrote to Officer Ragno directing him to report to work on November 15, 2004 for a transitional light duty assignment. The assigned work was to include the following:

- Answering phones, while seated;
- Dispatching police calls, while seated;
- Monitoring but not having any physical contact with prisoners outside of closed prison cells;
- Typing and making computer record entries, while seated;
- Interacting with the public through a glass partition, while seated.

(A copy of Chief Benefico's Directive and attached doctor's report is attached as Exhibit "A").

7. Officer Ragno reported for duty on November 15, 2004. he also produced an opinion from his physician dated November 16, 2004 which stated the following:

> Mr. Ragno is unable to use a weapon, or defend himself due to an injury to his left hand. He therefore should not be placed in a situation where his life or safety, or the safety of the public could be at risk. **He is able to do light duty as long as he is not in a situation where he will need to defend himself or others.**

(Emphasis added). (Dr. Kleinman's opinion dated November 16, 2004 is attached as Exhibit "B").

8. Although he reported for work on his light duty assignment, Officer Ragno failed to complete any of his workdays claiming he was unable to do so because of pain in his left wrist. The Village, however, continued to pay him his full pay.

9. Officer Ragno was ordered by a memorandum dated December 15, 2004 to report for an examination by a physician selected by the Village to determine if he was capable of performing full tours of light duty. (A copy of the directive is attached as Exhibit "C").

10. The orthopedic physician selected by the Village examined Officer Ragno and determined that he was physically capable of working full eight (8) hour shifts of transitional light duty despite his wrist injury. (Copies of Dr. Panio's reports dated January 13 and February 16, 2005 are attached as Exhibit "D").

11. By memorandum dated February 22, 2005, Officer Ragno was ordered to work full seven and one-half hour tours of light duty starting February 28, 2005. (A copy of the Order and the description of the light duty assignment that was appended to the Order is attached as Exhibit "E").

12. Despite the Order, Office Ragno continued to fail to work a full seven and one-half (7 1/2) hour work shift. Specifically, Officer Ragno only worked limited number of hours of his assigned transitional light duty on the following workdays:

| DATE | HOURS | DATE | HOURS | DATE | HOURS |
|---|---|---|---|---|---|
| February 28 | 2 | April 1 | 0 | | |
| March 1 | 0 | April 4 | 2 | May 2 | 0 |
| March 2 | 3 | April 5 | 3 | May 3 | 2 ¼ |
| March 3 | 0 | April 6 | 0 | May 4 | 0 |
| March 4 | 6 | April 7 | 2 1/2 | | |
| March 7 | 5 ½ | April 8 | 2 1/2 | | |
| March 8 | 4 ½ | April 11 | 3 1/2 | | |
| March 9 | 3 1/2 | April 12 | 2 1/2 | | |
| March 10 | 0 | April 13 | 2 | | |
| March 11 | 4 | April 14 | 2 | | |
| March 14 | 2 ½ | April 15 | 0 | | |
| March 15 | 1 ½ | April 18 | 2 1/2 | | |
| March 16 | 3 | April 19 | 2 1/2 | | |
| March 17 | 0 | April 20 | 2 1/2 | | |
| March 18 | 3 | April 21 | 0 | | |
| March 21 | 3 | April 22 | 0 | | |
| March 22 | 3 | April 25 | 2 | | |
| March 23 | 3 1/2 | April 26 | 2 | | |
| March 24 | 2 1/2 | April 27 | 0 | | |
| March 25 | 0 | April 28 | 0 | | |
| March 28 | 2 | April 29 | 0 | | |
| March 29 | 1 3/4 | | | | |
| March 30 | 2 1/2 | | | | |
| March 31 | 2 | | | | |

A zero (0) indicates Officer Ragno did not report for duty that day.

13. During the time frame, Officer Ragno's attorney sent a letter dated March 10, 2005, enclosing two (2) notes from his physician, Dr. Kleinman, stating "[p]atient may continue to work light duty. Must be able to leave when pain occurs in left wrist." (A copy of Officer Ragno's attorney's letter and the doctor's notes are attached as Exhibit "F").

14. Since the opinion from Dr. Kleinman was contradictory and did not address the cause of the pain, I wrote to him on March 15, 2005 to obtain a specific medical opinion regarding Officer Ragno's ability to perform the transitional light duty assignment. I requested that Dr. Kleinman respond by March 25, 2005. (A copy of my March 15, 2005 letter with attachment to Dr. Kleinman is attached as Exhibit "G").

15. On April 1, 2005, Dr. Kleinman faxed to me a letter dated March 26, 2005 that was no more specific than his previous note. Dr. Kleinman again wrote that Officer Ragno could perform all of the light duty functions but inconsistently stated "[i]f the patient experiences pain in the left wrist while working, he should be excused so that he can rest the wrist to alleviate the pain." (A copy of Dr. Kleinman's fax cover sheet and note are attached as Exhibit "H").

16. Dr. Kleinman made no attempt to explain how the duties which in his medical opinion he believed that Officer Ragno could perform would cause him pain in his wrist. In addition, I specifically asked Dr. Kleinman in my March 15, 2005, letter "[f]or any of the above duties, in your medical opinion is there some change the department can make in his assigned light duties to address or prevent pain in his wrist?" Dr. Kleinman did not respond at all to this question. In sum, Dr. Kleinman gave a medical opinion that Officer Ragno could perform the assigned light duties and did not state whether or not the pain was related to Officer Ragno's light duty assignments. In the Village's opinion, Dr. Kleinman's response was not sufficient to require the Village to hold a factual hearing under Section 207-c of the General Municipal Law as to whether he could be required to report for full workdays of transitional light duty and if he failed to do so that he would not be paid for hours not worked.

17. The Village did not pay Officer Ragno for the days he did not report for his light duty assignment or the hours he did not work when he did report. The reason for doing so was that Officer Ragno's physician did not address or rebut the medical opinion of Dr. Panio that he was able to perform full tours of light duty nor did his physician provide an opinion whether his wrist pain was being caused by the light duty assignment or his line-of-duty injury.

18. Officer Ragno underwent an arthroscopic procedure on his wrist on May 5, 2005 that will hopefully lead to his recovery and return to full duty status. Officer Ragno has been out of work since that date and received full pay from the Village.

## JOSEPH DEMASI

19. Petitioner DeMasi is employed as a Police Officer in the Department. He has been employed since January 18, 1982.

20. Officer DeMasi had been absent from work receiving his full salary pursuant to Section 207-c of the General Munic ipal Law since April 22, 2002 due to a back injury. At present, his annual salary is $71,089.

21. On November 5, 2004, based upon a report from the Department Physician, Officer DeMasi was ordered to report for duty on a transitional light duty basis starting November 15, 2004. (A copy of the directive from Police Chief Benefico and the report of the Department's Physician are attached as Exhibit "I").

22. The Village was advised by Officer DeMasi's attorney that Officer DeMasi did not feel he was physically able to perform a light duty assignment. The attorney did not provide a medical report to that effect. I wrote to Officer DeMasi on November 10, 2004 requesting a written report from his physician addressing whether he could perform the transitional light duty assignment. (A copy of my letter is attached as Exhibit "J"). Those duties as outlined in Chief Benefico's November 5, 2005 memo were as follows:

- Answering phone, while seated;

- Dispatching police calls, while seated;

- Monitoring, but not having any physical contact with prisoners outside of closed prisoner cells;

- Typing and making computer record entries, while seated;

- Interacting with the public through a glass partition, while seated;

- Driving a vehicle to deliver mail or packages not exceeding two (2) pounds in weight;

3760.1 6/8/2005

- Wearing a uniform while on desk duty; wearing approved dress-down clothes while making deliveries outside of the department; and

- Other similar and related duties consistent with the recommendations of the physician.

23. Officer DeMasi's physician, William A. Unis, wrote on November 17, 2004, in pertinent part, as follows:

> He can persist with (sic) on light duty as long as there is no exposure to potential harmful situations.

(A copy of Dr. Unis' note is attached as Exhibit "K").

24. Since both the Department Physician and Dr. Unis stated that Officer DeMasi could physically perform light duty, Chief Benefico directed him to report for light/transitional duty on December 7, 2004. (A copy of Chief Benefico's Order is attached as Exhibit "L")

25. Officer DeMasi did not report for work on December 7, 2004. He notified the Department that he was unable to work due to pain from his back injury. The Village could have stopped paying him for days he did not report for work at that point in time because the medical evidence he provided indicated that he could perform light duty. However, to afford Officer DeMasi all consideration, the Village directed him to an examination by an orthopedic physician. (A copy of my letter directing him to such an examination is attached as Exhibit "M").

26. I wrote to the orthopedist, Dr. Panio, with a description of the work that Officer DeMasi would be expected perform on light/transitional duty. (A copy of my letter to Dr. Panio is attached as Exhibit "N").

27. Dr. Panio wrote in a report dated December 23, 2004, that Officer DeMasi was physically capable of performing light duty. (A copy of Dr. Panio's report is attached as Exhibit "O").

28. I then wrote to Officer DeMasi's physician on January 19, 2005 requesting his opinion as to whether Officer DeMasi could physically perform the light duties that the Department was to assigning him. I asked Dr. Unis to respond by January 28, 2005. (A copy of my letter and attachments is attached as Exhibit "P").

29. I did not receive a response to my letter by January 28, 2005. Therefore, Officer DeMasi was directed to report for light duty on February 2, 2005. (A copy of the directive is attached as Exhibit "Q").

30. Dr. Unis wrote a note dated February 11, 2005, which stated that Officer DeMasi could perform the light duty assigned to him by the Department. (A copy of the letter of Dr. Unis is attached as Exhibit "R").

31. Since there was no dispute that Officer DeMasi could perform a light duty assignment, effective February 21, 2005, the Village began to pay him only for time actually worked on his assigned work tours. As such, he was paid as follows:

## FEBRUARY

| Day | Hours |
|---|---|
| 21 | 0 |
| 22 | 0 |
| 23 | 1 |
| 24 | 0 |
| 25 | 0 |
| 28 | 2 |

## MARCH

| Day | Hours |
|---|---|
| 1 | 0 |
| 2 | 1 1/2 |
| 3 | 1 1/2 |
| 4 | 0 |
| 7 | 1 |
| 8 | 1 |
| 9 | 0 |
| 10 | 1 |
| 11 | 0 |
| 14 | 1 |
| 15 | 0 |
| 16 | 0 |
| 17 | 2 |
| 21 | 0 |
| 22 | 1 1/2 |
| 23 | 2 |
| 28 | 0 |
| 29 | 1 1/4 |
| 30 | 0 |
| 31 | 3/4 |

## APRIL

| Day | Hours |
|---|---|
| 1 | 0 |
| 4 | 0 |
| 5 | 0 |
| 6 | 1 |
| 7 | 2 1/2 |
| 8 | 1 1/2 |
| 11 | 1 |
| 12 | 1 |
| 13 | 1 |
| 14 | 0 |
| 15 | 1 |
| 18 | 0 |
| 19 | 1 1/2 |
| 20 | 0 |
| 21 | 0 |
| 22 | 0 |
| 25 | 0 |
| 26 | 2 |
| 28 | 8 |
| 29 | 0 |

## MAY

| Day | Hours |
|---|---|
| 2 | 0 |
| 3 | 1 |
| 4 | 0 |
| 5 | 0 |
| 6 | 0 |
| 16 | 1 |
| 17 | 0 |
| 18 | 1 1/5 |
| 19 | 0 |
| 20 | 0 |
| 23 | 0 |
| 24 | 0 |
| 25 | 0 |
| 27 | 0 |

3760.1 6/8/2005

The days with zero (0) hours paid are days Officer DeMasi did not report at all for work. Officer DeMasi was also absent from work for the entire day because of a reported sinus infection on May 10, 11, 12, 13 and 26 for which he was paid with regular sick leave.

32. On March 31, 2005 the Department was faxed a copy of a letter from Dr. Unis to the NYS Retirement System. Neither the Village or the Department received any direct correspondence or opinions from Dr. Unis or other physicians treating Officer DeMasi after Dr. Unis' February 11, 2005 letter. Therefore, the Village has continued to pay Officer DeMasi only for days and hours he actually works.

### FIREFIGHTER JOHN PENNETTA

33. Firefighter John Pennetta is employed by the Village of Pelham Fire Department. Firefighter Pennetta injured his knee on duty and is on General Municipal Law § 207-a status. Firefighter Pennetta was ordered to report for a light duty assignment effective January 24, 2005.

34. Firefighter Pennetta reported for light duty. Since that time, he has missed only one (1) day of work.

_____
Richard Slingerland

Sworn to before me this
8th day of June, 2005

_____
Notary Public

TERRI J. ROUKE
Notary Public, State of New York
No. 01RO6082504
Qualified in Westchester County
Commission Expires 10/28/2006