**Exhibit I to Slingerland Affidavit –**
**Village of Pelham Administrator's Office Memorandum from Richard**
**Slingerland to Dr. William McCann, dated September 22, 2004**
**[pp. 61-62]**

# Village of Pelham

# Administrator's Office Memorandum

To:        Village Physician William McCann, MD

From:      Richard Slingerland, Village Administrator

Date:      September 22, 2004

Re:        Clarification of Transitional Light Duty Assignments for P.O. Joseph DeMasi

I received your review for Police Officer Joseph DeMasi on Friday, September 17, 2004, and called you immediately to discuss the discrepancy between your responses to questions 1 and 2 in our original questionnaire (see attached). So that we may fully understand your response to question 1, and address which specific tasks encompass the front desk duty the employee is physically able to perform, we request your immediate response to the following:

In your review and examination of the aforementioned employee, please answer the following questions:

| # | Question | Yes | No | W/Limitations |
|---|---|---|---|---|
| a. | Is the officer in question physically capable of answering phones, while seated? | ✓ | | |
| | If no, please explain medical basis for denial: _____ _____ | | | |
| b. | Is the officer in question physically capable of dispatching police calls while seated? | ✓ | | |
| | If no, please explain medical basis for denial: _____ _____ | | | |
| c. | Is the officer in question physically capable of monitoring but not having any physical contact with prisoners, outside of closed prisoner cells? | ✓ | | |
| | If no, please explain medical basis for denial: _____ _____ | | | |
| d. | Is the officer in question physically capable of typing and computer record entry, while seated? | ✓ | | |
| | If no, please explain medical basis for denial: _____ _____ | | | |

**Michael J. Clain**
Mayor

Westchester County
New York

**Richard Slingerland**
Administrator

November 5, 2004

Mr. Joseph DeMasi
17 LaMesa Avenue
Eastchester, NY 10709

Re:    Transitional Light Duty

Dear Officer DeMasi:

The Village of Pelham has received the results of the most recent report from Dr. William McCann, M.D., clearing you to work transitional light duty in police headquarters. A copy of the latest report is enclosed. As you will note, Dr. McCann has cleared you for answering phones, dispatching police calls, monitoring (with no physical contact) prisoners, typing, computer record entry, interacting with the public through a glass partition, driving to deliver packages.

Accordingly, I have set November 15, 2004 as the date on which you will report to headquarters for your light duty assignment consistent with Dr. McCann's recommendations. Please contact me by no later than 4 p.m. on Wednesday, November 10, 2004, so that I can provide you with a time to report on November 15, 2004, and a schedule going forward.

Until further notice, the duties you will be assigned include but are not limited to the following:

- answering phones, while seated
- dispatching police calls while seated
- monitoring but not having any physical contact with prisoners outside of closed prisoner cells
- typing and making computer record entries, while seated
- interacting with the public through a glass partition, while seated
- driving a vehicle to deliver mail or packages not exceeding two (2) pounds in weight
- wearing a uniform while on desk duty; wearing approved dress-down clothes while making deliveries outside of the department.
- other similar and related duties consistent with the recommendations of the physician.

During your light duty assignment, you are not to have any direct physical contact with any prisoner or other person. While working at the front desk during your light duty assignment, you are to remain behind the glass partition at all times.

---

**Exhibit J to Slingerland Affidavit –**
**Letter from Richard Slingerland to Joseph DeMasi,**
**dated November 10, 2004**

*File*



Michael J. Clain
Mayor

Richard Slingerland
Administrator

Westchester County
New York

November 10, 2004

Mr. Joseph DeMasi
17 LaMesa Avenue
Eastchester, NY ·10709

Re:    Backup medical information

Dear Mr. DeMasi:

The Village has been advised by your attorney that you do not feel you are physically able to report for transitional light duty on Monday, November 15, 2004.

The Village has no current medical information from your physician(s) indicating that you are unable to perform the transitional light duties specified in the memo dated Friday, November 5, 2004.

You must submit a written report from your physician specifically addressing whether you can perform the duties described in the transitional light duty memo.

If your physician believes that you cannot perform all of the described duties, then he/she must specify which duties in their medical opinion you can perform.  If such a medical opinion is not received by my office by 4 p.m. on Friday, November 19, 2004, you should report to work as per the Chief's order at the time set on Monday, November 22, 2004.

Sincerely,

Richard Slingerland
Village Administrator

cc:    Anthony Solfaro, President, NYSUPA
       Mayor and Board of Trustees
       Robert Tracy, Village Attorney·
       Ernie Stolzer, Esq.
       Joseph Benefico, Police Chief
       Rich Vasami, PBA President

Exhibit K to Slingerland Affidavit –
Dr. William A. Unis' Medical Report, dated November 17, 2004

02/16/2005  12:09    9147387381              VILLAGE OF PELHAM                  PAGE  01

### WILLIAM A. UNIS, M.D., P.C.
77 PONDFIELD ROAD
BRONXVILLE, NEW YORK 10708
——
TELEPHONE (914) 793-0153
FAX (914) 793-7431

November 17, 2004

RE: DEMASI JOSEPH

To Whom It May Concern:

The symptoms persist. He complains of low back pain with radiation into the right buttock and posterior thigh. Standing or sitting for a prolonged period of time worsens the symptoms. Motion in the low back is limited. He still has tenderness in the right sacroiliac joint. Straight leg raising is noted at 60-70 degrees. Officer Demasi is currently on light duty. I feel that Officer Demasi should not be placed on desk duty as there is a tremendous risk of confrontation, etc. and this would jeopardize the patient's health. He can persist with on light duty as long as there is not exposure to potential harmful situations. Officer Demasi would not have the ability to protect himself or guard his weapon if the situation should arise.

If you have any questions, please do not hesitate to contact my office at (914) 793-0999.

Thank you,

William A. Unis, M.D.

WU:jcd

Exhibit L to Slingerland Affidavit –
Letter from Chief Joseph Benefico to Joseph DeMasi,
dated December 1, 2004 and Pelham Police Department Procedure Order
[pp. 65-66]

# Police Department



JOSEPH R. BENEFICO
CHIEF OF POLICE





(914) 738-2000

**VILLAGE OF PELHAM**

34 FIFTH AVENUE · TOWN HALL
PELHAM, NEW YORK 10803

December 1, 2004

Officer Joseph DeMasi
17 Lamesa Avenue
Eastchester, New York  10709

Officer DeMasi:

You are directed to report to work at 7:00AM on Tuesday, December 7, 2004. You will be assigned to a Dual Desk Duty assignment as described in the attached Light/Transitional Duty Procedure Order Dated November 22, 2004.  Such assignment is consistent with your physical status as described by your physician in his opinion dated November 17, 2004 previously provided to the Village.

You are to report to work in civilian clothes, consisting of dress pants, collared shirts with no markings and shoes.  No jeans, t-shirts or sneakers are allowed.  Additionally, you are not to wear a gunbelt or carry your weapon.  You will work the normal rotation of tours starting on the date you are directed to report to work by this letter.

Sincerely

Joseph Benefico
Chief of Police

cc: Richard Slingerland, Village Administrator

PELHAM POLICE DEPARTMENT
PROCEDURE ORDER

SUBJECT: Light/Transitional Duty
Effective: November 22, 2004

Page 1 of 1

## I.    PURPOSE

To provide a position within the Police Department that allows officers who are out of work due to injury or illness compensable under §207-c of the General Municipal Law to transition back to work in a capacity that does not exceed their physical abilities in a way that does not pose a danger to themselves, their fellow officers and the general public during this transition period.

## II.    POLICY

Light Duty/Transitional Duty will be a work assignment that is less than full duty but is within, and consistent with, the injured officer's physical status. The Chief of Police will place officers who are to work Light/Transitional Duty in an assignment. Light Duty/Transitional Duty assignments, by their nature, can change over time as circumstances dictate, and the Police Department reserves its right to modify such assignments consistent with the officer's physical status.

A Light Duty/Transitional Duty assignment can include, but is not limited to, one or more of the following:

Solo Desk Duty-where the officer is physically capable of working the Police desk, on his own, and can perform all the functions of the desk in a safe and efficient manner.

Dual Desk Duty-similar to the above assignment, but the officer will be working with another officer, who is not also on a light/transitional assignment. In this capacity, where the light duty officer has a disability preventing the performance of one or more of the functions of the desk, such as prisoner handling or monitoring, the light duty officer will be instructed to refrain from dealing with prisoners. In addition, other officers will be instructed not to call on this officer for assistance requiring physical interaction with a prisoner or a member of the public. Additionally, the light duty officer will remain behind the Plexiglas partition at all times and will not have direct physical contact with prisoners or the general public.

Back office assignments-are assignments that the officer performs away from the police desk and the officer will not have any contact with the public, or prisoners for his safety and the safety of all others.

**Exhibit M to Slingerland Affidavit –**
**Chief Joseph Benefico's Directive, dated December 15, 2004**



Michael J. Clain
Mayor

Richard Slingerland
Administrator

Westchester County
New York

December 15, 2004

Mr. Joseph DeMasi
17 LaMesa Avenue
Eastchester, NY 10709

Re:    Order to report for medical examination

Dear Mr. DeMasi:

We have been advised that you did not report to work for your most recent scheduled tour of duty, and also that you did not attend a scheduled medical review. We have not received any medical verification you were physically unable to report for your tour.

You are ordered and directed to report to Dr. Panio's office at 2:00 p.m. on Monday, December 20, 2004 for a medical examination regarding your 207-c injury.

Your failure to report for this scheduled appointment will be considered insubordination and possibly cause for termination of your 207-c benefits.

Very truly yours,

Joseph Benefico
Police Chief

Richard Slingerland
Village Administrator

**Exhibit N to Slingerland Affidavit –**
**Village of Pelham Administrator's Office Memorandum from**
**Richard Slingerland to Dr. Michael Panio, dated December 14, 2004**
**[pp. 68-69]**

# *Village of Pelham*
# *Administrator's Office Memorandum*

To:        Physician Dr. Michael Panio, MD

From:      Richard Slingerland, Village Administrator

Date:      December 14, 2004

Re:        Update on Medical Review and clearance for Transitional Light Duty
           Assignments for P.O. Domenic Ragno

I am referring for your medical review Police Officer Domenic Ragno. He has a scheduled appointment with you at 2:30 p.m. Tuesday, December 21, 2004. Attached is a medical review and related opinions of Mr. Ragno's doctors. Please answer the following questions, to determine in your medical opinion whether Mr. Ragno is physically capable of performing any or all of the following duties. Also attached is an additional letter to read before this scheduled appointment.

| # | Question | Yes | No | W/Limitations |
|---|----------|-----|----|---------------|
| a. | Is the officer in question physically capable of answering phones, while seated? | | | |
| | If no, please explain medical basis for denial: _____ _____ _____ | | | |
| b. | Is the officer in question physically capable of dispatching police calls while seated? | | | |
| | If no, please explain medical basis for denial: _____ _____ _____ | | | |
| c. | Is the officer in question physically capable of monitoring but not having any physical contact with prisoners, outside of closed prisoner cells? | | | |
| | If no, please explain medical basis for denial: _____ _____ _____ | | | |
| d. | Is the officer in question physically capable of typing and computer record entry, while seated? | | | |
| | If no, please explain medical basis for denial: _____ _____ _____ | | | |

| e. | Is the officer in question physically capable of interacting with the public through a glass partition, while seated? | | | |
|---|---|---|---|---|

If no, please explain medical basis for denial:

_____

_____

| f. | Is the officer in question physically capable of driving a vehicle to deliver mail or packages not exceeding two (2) pounds in weight? | | | |
|---|---|---|---|---|

If no, please explain medical basis for denial:

_____

_____

| g. | With respect to any of the tasks identified in questions a. through f., please identify whether the officer's wearing of a uniform will impact his physical ability to perform that task. | | | |
|---|---|---|---|---|

If there are any impacts identified, please explain:

_____

_____

The Village proposes these transitional light duty assignments, on a case-by-case basis, to continue until the affected employee is cleared to return to full duty.

It is proposed that officers on light duty assignment, including duty at the Front Desk, will not be in full uniform, but in office casual dress. These officers are specifically directed by the Village not to engage in contact with the public or prisoners, including any potentially hazardous-duty (subduing a prisoner) or heavy physical work situations. Performing such work contrary to the Village's order would be construed as insubordination.

cc:    P.O. Ragno
       PBA President Rich Vasami
       Marge Growick, PERMA
       Ernest Stolzer, Esq.

**Exhibit O to Slingerland Affidavit –**
**Dr. Michael W. Panio's Medical Report, dated December 23, 2004**
**[pp. 70-71]**

ERIC K. ZITZMANN, M.D.
MICHAEL W. PANIO, M.D.
LOUIS F. McINTYRE, M.D.
KENNETH D. PALMER, M.D.
SHEVAUN M. DOYLE, M.D.
RICHARD G. FREEMAN, M.D.
COLLEEN M. FAY, M.D.

PHONE    914-946-1010
FAX      914-946-1025

**MICHAEL W. PANIO, M.D.**
**222 WESTCHESTER AVENUE – SUITE 101**
**WHITE PLAINS, N.Y. 10604**

December 23, 2004

VILLAGE OF PELHAM
195 SPARKS AVEUNE
PELHAM, NEW YORK 10803

ATTN:  RICHARD SLINGERLAND
       VILLAGE ADMINISTRATOR

RE:    DEMASI, JOSEPH
       Chart#: 68380

Dear Mr. Slingerland:

This gentleman states that he was on duty the evening of April 22, 2002 when he assisted a female driver whose car had stalled on a two-way street. Her car was facing northbound and it was adjacent to a line of parked cars. Slightly forward of her car was an empty space. The driver of the car was in the vehicle and the officer was attempting to push the vehicle into the empty space. Since the car was not operational there was no power steering and the front tires ended up hitting the curb. The officer then went to the front of the vehicle attempting to push the car out several feet so that she could then manually turn the wheels to the left and then move the car into the space with the officer once again behind the vehicle. With the officer pushing from the front of the car, another vehicle came along and hit the disabled car from behind throwing the officer backwards having him land on his low back and buttock as well as both hands. This was the genesis of the current event.

**ON EXAM:** The patient walks with a normal gait, which is quite quick. He can easily stand on tiptoes and heels. When he hops on the right leg he complains of some slight low back discomfort. Hopping on the left leg does not produce any low back discomfort. He can perform heel raises on a unilateral leg to the count of 10 on each side. He can perform full squats. Lateral bending of the lumbar spine to both the right and left causes slight discomfort. He has full rotation to the right and left. Extension is limited to a considerable degree. Forward flexion is possible only fingertips to upper calves. In the sitting position with the patient's feet on my knees, while I am sitting on an examining stool, he achieves almost 80 degrees worth of angulation between upper torso and both lower extremities. He is comfortable in this position. In this position, I have determined that his dorsalis pedis pulses are 2+ and his posterior tibial pulses are 3+. With the knees bent to 90 degrees and relaxed, his ankle reflexes are 1+ and his knee reflexes even with augmentation are 0 bilaterally.

The patient has considerable discrepancy in muscle testing in that he gives way in a ratchet type fashion where he will apply pressure and then relax, apply pressure, and relax against my steady resistance. This is true of anterior tib, extensor halluses, and extensor digitorum and foot flexors. There is a significant discrepancy in that I can hold his plantar flexors from pushing down in the sitting position, but yet a gentleman of this size can easily stand on one leg and raise his entire body weight up on one leg 10 times in a row indicating that he can push the foot into plantar flexion with relative ease. The patient can actively straight leg raise and does so only about 6 inches off the table top on either side and cannot bilaterally actively straight leg raise because of low back pain. Passive straight leg raising is performed by first flexing the hip and he can get to about 95 degrees both sides, and then at 90 degrees attempting to extend the knee. I can achieve full leg extension minus about 30 degrees bilaterally indicating significant hamstring tightness and this is indeed the case when I palpate his hamstring musculature. In this position, he does <u>not</u> complain of any low back pain or sciatic type distribution.

With the hip in 90 degrees of flexion and the knee in 90 degrees of flexion, his external rotation bilaterally is 30 degrees and his internal rotation is 20 degrees. Side lying hip abduction on the right side is strong and on the left side is slightly weak and he tends to give way. This is another discrepancy in that he does not have any evidence towards a Trendelenburg gait when ambulating.

In the prone position, he has no spinous process tenderness to palpation, but has some mild right-sided sacroiliac joint discomfort. His sciatic notch is nontender to palpation.

The skin of both lower extremities is warm, dry and intact. There are no palpable lymph nodes around either knee.

**OPINION:** This gentleman shows multiple inconsistencies on his physical exam and a true evaluation of his performance cannot be achieved today by this examination. In request to questions A, B, C, D, E, F and G, this patient is able to perform A through E for a full 40-hour workweek. For question letter F, the patient is physical capable of driving a vehicle to deliver mail or packages not exceeding two pounds in weight, but I would not have him in uniform, nor would I have him carry a weapon. Letter G has been answered as part of letter F. Hopefully this information will be of some assistance to you.

Sincerely,

Michael W. Panio, M.D.
MWP:lb

### Exhibit P to Slingerland Affidavit –
### Letter from Richard Slingerland to Dr. William Unis,
### dated January 19, 2005
### [pp. 72-84]



**Michael J. Clain**
Mayor

**Richard Slingerland**
Administrator

January 19, 2005

Dr. William Unis
77 Pondfield Road
Bronxville, NY 10708

Re:    Joseph DeMasi, Police Officer

Dear Dr. Unis:

I am writing pursuant to your notes dated July 22, 2004 and November 17, 2004, in which you wrote a medical evaluation of Joseph DeMasi, who claims ongoing difficulties due to a back injury. Your notes explained Mr. DeMasi experiences worsened symptoms if he is required to stand or sit for prolonged periods of time. The Village of Pelham has two (2) medical opinions (enclosed) which clear Mr. DeMasi to return to work on a transitional light-duty basis, the most recent of which clears Mr. DeMasi to return to work for a full forty (40) hour week.

Please detail the specific duties you believe in your medical opinion Mr. DeMasi can or cannot perform, based on the following list of questions, including whether there is some provision the Village can take to facilitate Mr. DeMasi's ability to work a full eight-hour work shift. For example, would you advise him to stand and stretch, or should we provide some piece of furniture he can rest on if he becomes stiff or experiences pain, or do you have some other medical recommendation?

Is the officer in question physically capable of:
1.    Answering phones, while seated?
2.    Dispatching police calls, while seated? While standing?
3.    Monitoring but not having any physical contact with prisoners outside of cells?
4.    Typing reports and making computer entries, while seated?
5.    Interacting with the public through a glass partition, while seated?
6.    Driving a vehicle to deliver mail or packages not exceeding two (2) pounds in weight?
7.    With respect to any of the aforementioned tasks, please explain whether there is any medical issue with regard to their performing their duties while wearing a uniform.

* For any of the above duties that in your medical opinion he cannot physically perform, is there some accommodation that can be provided to him to allow him to do so, e.g. periodic time to rest or other suggestions?

I would like to request your response by 12 Noon on Friday, January 28, 2005.

If you would like to discuss these questions, please contact me directly at 914-738-2015.

Very truly yours,

Richard Slingerland
Village Administrator

195 Sparks Avenue, Pelham, New York 10803    •    Telephone 914-738-2015    •    Facsimile 914-738-7381

ERIC K. ZITZMANN, M.D.
MICHAEL W. PANIO, M.D.
LOUIS F. McINTYRE, M.D.
KENNETH D. PALMER, M.D.
SHEVAUN M. DOYLE, M.D.
RICHARD G. FREEMAN, M.D.
COLLEEN M. FAY, M.D.

PHONE    914-946-1010
FAX        914-946-1025

**MICHAEL W. PANIO, M.D.**
**222 WESTCHESTER AVENUE – SUITE 101**
**WHITE PLAINS, N.Y. 10604**

December 23, 2004

VILLAGE OF PELHAM
195 SPARKS AVEUNE
PELHAM, NEW YORK 10803

ATTN:  RICHARD SLINGERLAND
         VILLAGE ADMINISTRATOR

RE:     DEMASI, JOSEPH
         Chart#: 68380

Dear Mr. Slingerland:

This gentleman states that he was on duty the evening of April 22, 2002 when he assisted a female driver whose car had stalled on a two-way street. Her car was facing northbound and it was adjacent to a line of parked cars. Slightly forward of her car was an empty space. The driver of the car was in the vehicle and the officer was attempting to push the vehicle into the empty space. Since the car was not operational there was no power steering and the front tires ended up hitting the curb. The officer then went to the front of the vehicle attempting to push the car out several feet so that she could then manually turn the wheels to the left and then move the car into the space with the officer once again behind the vehicle. With the officer pushing from the front of the car, another vehicle came along and hit the disabled car from behind throwing the officer backwards having him land on his low back and buttock as well as both hands. This was the genesis of the current event.

**ON EXAM:** The patient walks with a normal gait, which is quite quick. He can easily stand on tiptoes and heels. When he hops on the right leg he complains of some slight low back discomfort. Hopping on the left leg does not produce any low back discomfort. He can perform heel raises on a unilateral leg to the count of 10 on each side. He can perform full squats. Lateral bending of the lumbar spine to both the right and left causes slight discomfort. He has full rotation to the right and left. Extension is limited to a considerable degree. Forward flexion is possible only fingertips to upper calves. In the sitting position with the patient's feet on my knees, while I am sitting on an examining stool, he achieves almost 80 degrees worth of angulation between upper torso and both lower extremities. He is comfortable in this position. In this position, I have determined that his dorsalis pedis pulses are 2+ and his posterior tibial pulses are 3+. With the knees bent to 90 degrees and relaxed, his ankle reflexes are 1+ and his knee reflexes even with augmentation are 0 bilaterally.

The patient has considerable discrepancy in muscle testing in that he gives way in a ratchet type fashion where he will apply pressure and then relax, apply pressure, and relax against my steady resistance. This is true of anterior tib, extensor halluses, and extensor digitorum and foot flexors. There is a significant discrepancy in that I can hold his plantar flexors from pushing down in the sitting position, but yet a gentleman of this size can easily stand on one leg and raise his entire body weight up on one leg 10 times in a row indicating that he can push the foot into plantar flexion with relative ease. The patient can actively straight leg raise and does so only about 6 inches off the table top on either side and cannot bilaterally actively straight leg raise because of low back pain. Passive straight leg raising is performed by first flexing the hip and he can get to about 95 degrees both sides, and then at 90 degrees attempting to extend the knee. I can achieve full leg extension minus about 30 degrees bilaterally indicating significant hamstring tightness and this is indeed the case when I palpate his hamstring musculature. In this position, he does not complain of any low back pain or sciatic type distribution.

With the hip in 90 degrees of flexion and the knee in 90 degrees of flexion, his external rotation bilaterally is 30 degrees and his internal rotation is 20 degrees. Side lying hip abduction on the right side is strong and on the left side is slightly weak and he tends to give way. This is another discrepancy in that he does not have any evidence towards a Trendelenburg gait when ambulating.

In the prone position, he has no spinous process tenderness to palpation, but has some mild right-sided sacroiliac joint discomfort. His sciatic notch is nontender to palpation.

The skin of both lower extremities is warm, dry and intact. There are no palpable lymph nodes around either knee.

**OPINION:** This gentleman shows multiple inconsistencies on his physical exam and a true evaluation of his performance cannot be achieved today by this examination. In request to questions A, B, C, D, E, F and G, this patient is able to perform A through E for a full 40-hour workweek. For question letter F, the patient is physical capable of driving a vehicle to deliver mail or packages not exceeding two pounds in weight, but I would not have him in uniform, nor would I have him carry a weapon. Letter G has been answered as part of letter F. Hopefully this information will be of some assistance to you.

Sincerely,

Michael W. Panio, M.D.
MWP:lb

*File*

# *Village of Pelham*
# *Administrator's Office Memorandum*

To:        Physician Dr. Michael Panio, MD

From:      Richard Slingerland, Village Administrator

Date:      December 10, 2004

Re:        Update on Medical Review and clearance for Transitional Light Duty
           Assignments for P.O. Joseph DeMasi

I am referring for your medical review Police Officer Joseph DeMasi. Attached is a medical review and related opinions of Mr. DeMasi's doctors. Please answer the following questions, to determine in your medical opinion whether Mr. DeMasi is physically capable of performing any or all of the following duties.

| # | Question | Yes | No | W/Limitations |
|---|----------|-----|-----|---------------|
| a. | Is the officer in question physically capable of answering phones, while seated? | | | |
| | If no, please explain medical basis for denial: _____ _____ | | | |
| b. | Is the officer in question physically capable of dispatching police calls while seated? | | | |
| | If no, please explain medical basis for denial: _____ _____ | | | |
| c. | Is the officer in question physically capable of monitoring but not having any physical contact with prisoners, outside of closed prisoner cells? | | | |
| | If no, please explain medical basis for denial: _____ _____ | | | |
| d. | Is the officer in question physically capable of typing and computer record entry, while seated? | | | |
| | If no, please explain medical basis for denial: _____ _____ | | | |

| e. | Is the officer in question physically capable of interacting with the public through a glass partition, while seated? | | | |
|---|---|---|---|---|
| If no, please explain medical basis for denial: | | | | |

| f. | Is the officer in question physically capable of driving a vehicle to deliver mail or packages not exceeding two (2) pounds in weight? | | | |
|---|---|---|---|---|
| If no, please explain medical basis for denial: | | | | |

| g. | With respect to any of the tasks identified in questions a. through f., please identify whether the officer's wearing of a uniform will impact his physical ability to perform that task. | | | |
|---|---|---|---|---|
| If there are any impacts identified, please explain: | | | | |

The Village proposes these transitional light duty assignments, on a case-by-case basis, to continue until the affected employee is cleared to return to full duty.

It is proposed that officers on light duty assignment, including duty at the Front Desk, will not be in full uniform, but in office casual dress. These officers are specifically directed by the Village not to engage in contact with the public or prisoners, including any potentially hazardous-duty (subduing a prisoner) or heavy physical work situations. Performing such work contrary to the Village's order would be construed as insubordination.

cc:    P.O. DeMasi
       PBA President Rich Vasami
       Marge Growick, PERMA
       Ernest Stolzer, Esq.

WILLIAM A. UNIS, M.D., P.C.

77 PONDFIELD ROAD

BRONXVILLE, NEW YORK 10708

———

TELEPHONE (914) 793-0153

FAX (914) 793-7431

November 17, 2004

RE: DEMASI, JOSEPH

To Whom It May Concern:

The symptoms persist. He complains of low back pain with radiation into the right buttock and posterior thigh. Standing or sitting for a prolonged period of time worsens the symptoms. Motion in the low back is limited. He still has tenderness in the right sacroiliac joint. Straight leg raising is noted at 60-70 degrees. Officer Demasi is currently on light duty. I feel that Officer Demasi should not be placed on desk duty as there is a tremendous risk of confrontation, etc. and this would jeopardize the patient's health. He can persist with on light duty as long as there is not exposure to potential harmful situations. Officer Demasi would not have the ability to protect himself or guard his weapon if the situation should arise.

If you have any questions, please do not hesitate to contact my office at (914) 793-0999.

Thank you,

William Unis

William A. Unis, M.D.

WU:jcd





**Michael J. Clain**
Mayor

**Richard Slingerland**
Administrator

November 5, 2004

Mr. Joseph DeMasi
17 LaMesa Avenue
Eastchester, NY 10709

Re:     Transitional Light Duty

Dear Officer DeMasi:

The Village of Pelham has received the results of the most recent report from Dr. William McCann, M.D., clearing you to work transitional light duty in police headquarters. A copy of the latest report is enclosed. As you will note, Dr. McCann has cleared you for answering phones, dispatching police calls, monitoring (with no physical contact) prisoners, typing, computer record entry, interacting with the public through a glass partition, driving to deliver packages.

Accordingly, I have set November 15, 2004 as the date on which you will report to headquarters for your light duty assignment consistent with Dr. McCann's recommendations. Please contact me by no later than 4 p.m. on Wednesday, November 10, 2004, so that I can provide you with a time to report on November 15, 2004, and a schedule going forward.

Until further notice, the duties you will be assigned include but are not limited to the following:

- answering phones, while seated
- dispatching police calls while seated
- monitoring but not having any physical contact with prisoners outside of closed prisoner cells
- typing and making computer record entries, while seated
- interacting with the public through a glass partition, while seated
- driving a vehicle to deliver mail or packages not exceeding two (2) pounds in weight
- wearing a uniform while on desk duty; wearing approved dress-down clothes while making deliveries outside of the department.
- other similar and related duties consistent with the recommendations of the physician.

During your light duty assignment, you are not to have any direct physical contact with any prisoner or other person. While working at the front desk during your light duty assignment, you are to remain behind the glass partition at all times.

---

195 Sparks Avenue, Pelham, New York 10803     •     Telephone 914-738-2015     •     Facsimile 914-738-7381

# *Village of Pelham*
# *Administrator's Office Memorandum*

To:         Village Physician William McCann, MD

From:       Richard Slingerland, Village Administrator

Date:       September 22, 2004

Re:         Clarification of Transitional Light Duty Assignments for P.O. Joseph DeMasi

I received your review for Police Officer Joseph DeMasi on Friday, September 17, 2004, and called you immediately to discuss the discrepancy between your responses to questions 1 and 2 in our original questionnaire (see attached). So that we may fully understand your response to question 1, and address which specific tasks encompass the front desk duty the employee is physically able to perform, we request your immediate response to the following:

In your review and examination of the aforementioned employee, please answer the following questions:

| # | Question | Yes | No | W/Limitations |
|---|----------|-----|-----|---------------|
| a. | Is the officer in question physically capable of answering phones, while seated? | ✓ | | |
| | If no, please explain medical basis for denial: | | | |
| | | | | |

| | | | | |
|---|----------|-----|-----|---------------|
| b. | Is the officer in question physically capable of dispatching police calls while seated? | ✓ | | |
| | If no, please explain medical basis for denial: | | | |
| | | | | |

| | | | | |
|---|----------|-----|-----|---------------|
| c. | Is the officer in question physically capable of monitoring but not having any physical contact with prisoners, outside of closed prisoner cells? | ✓ | | |
| | If no, please explain medical basis for denial: | | | |
| | | | | |

| | | | | |
|---|----------|-----|-----|---------------|
| d. | Is the officer in question physically capable of typing and computer record entry, while seated? | ✓ | | |
| | If no, please explain medical basis for denial: | | | |
| | | | | |

**80**

# *Village of Pelham*
# *Administrator's Office Memorandum*

To:         Village Physician William McCann, MD

From:       Richard Slingerland, Village Administrator

Date:       September 22, 2004

Re:         Clarification of Transitional Light Duty Assignments for P.O. Joseph DeMasi

I received your review for Police Officer Joseph DeMasi on Friday, September 17, 2004, and called you immediately to discuss the discrepancy between your responses to questions 1 and 2 in our original questionnaire (see attached). So that we may fully understand your response to question 1, and address which specific tasks encompass the front desk duty the employee is physically able to perform, we request your immediate response to the following:

In your review and examination of the aforementioned employee, please answer the following questions:

| # | Question | Yes | No | W/Limitations |
|---|----------|-----|-----|---------------|
| a. | Is the officer in question physically capable of answering phones, while seated? | ✓ | | |
| | If no, please explain medical basis for denial: _____ _____ | | | |
| b. | Is the officer in question physically capable of dispatching police calls while seated? | ✓ | | |
| | If no, please explain medical basis for denial: _____ _____ | | | |
| c. | Is the officer in question physically capable of monitoring but not having any physical contact with prisoners, outside of closed prisoner cells? | ✓ | | |
| | If no, please explain medical basis for denial: _____ _____ | | | |
| d. | Is the officer in question physically capable of typing and computer record entry, while seated? | ✓ | | |
| | If no, please explain medical basis for denial: _____ _____ | | | |

| e. | Is the officer in question physically capable of interacting with the public through a glass partition, while seated? | ✓ | | |
|---|---|---|---|---|

If no, please explain medical basis for denial:

_____

_____

| f. | Is the officer in question physically capable of driving a vehicle to deliver mail or packages not exceeding two (2) pounds in weight? | ✓ | | |
|---|---|---|---|---|

If no, please explain medical basis for denial:

_____

_____

| g. | With respect to any of the tasks identified in questions a. through f., please identify whether the officer's wearing of a uniform will impact his physical ability to perform that task. | ✓ | | |
|---|---|---|---|---|

If there are any impacts identified, please explain:

_____I am concerns with those men in uniform_____

_____out of Head quaters._____

The Village proposes transitional light duty assignments, on a case-by-case basis, to continue until the affected employee is cleared to return to full duty.

It is proposed that officers on light duty assignment as described will be in uniform unless physically incapable of being in uniform, and will be specifically directed by the Village not to become involved in any hazardous-duty (subduing a prisoner) or heavy physical work situation. Performing such work contrary to the Village's order would be construed as insubordination.

cc:    P.O. DeMasi
       PBA President Rich Vasami
       Marge Growick, PERMA
       Ernest Stolzer, Esq.

*William J. McCauums.*

*10-27-07*



**E A S T C H E S T E R**

(914) 771.5086   FAX: (914) 771.5087
274 WHITE PLAINS ROAD   EASTCHESTER, NEW YORK 107 09

DEMASI, Joseph
DOB: 07/13/59
Referred by: Unis, M.D., William
OCM #: OCM100542270

08/27/04: MRI EXAMINATION OF THE LUMBAR SPINE:

HISTORY: Low back pain and radiculopathy.

A magnetic resonance imaging examination of the lumbosacral spine was performed. Images were acquired in the sagittal and transaxial planes.

COMMENTS: There is discogenic disease, spondylosis and diffuse posterior disc bulges from L3-L4 through L5-S1. There is a mild degree of facet joint osteoarthropathy bilaterally at L2-L3. At L3-L4 there is a moderate degree of facet joint osteoarthropathy bilaterally. At L3-L4 there is a right-sided HNP impressing on the right L4 nerve root as it exits the thecal sac. This is evident on transaxial T1 image #5. At L4-L5 there is a mild degree of anterior recess stenosis bilaterally secondary to a moderate degree of facet and ligamentous hypertrophy. At L5-S1 there is a moderate degree of facet joint osteoarthropathy on the right. There is mild right neural foraminal stenosis. Finally, the conus medullaris appears unremarkable.

IMPRESSION:

1.  There is discogenic disease, spondylosis and diffuse posterior disc bulges from L3-L4 through L5-S1.
2.  At L3-L4 there is a right-sided HNP impressing on the thecal sac and the right L4 nerve root as it exits the thecal sac.
3.  There is a mild degree of anterior recess stenosis bilaterally at L4-L5.
4.  There is a mild degree of right neural foraminal stenosis at L5-S1.

*Timothy J. Gre*

Timothy J. Greenan, M.D./tl/083004

The Health Information contained in this FAX/Report is Highly Confidential. It is intended for the exclusive use of the addressee. It is to be used only to aid in providing specific healthcare services to this patient. Any other use is a violation of Federal Law (HIPAA) and will be reported as such.

TIMOTHY J. GREENAN, M.D.
MEDICAL DIRECTOR

STEVEN W. WINTER, M.D.
DIRECTOR OF RADIOLOGY
AND BODY IMAGING

# *Village of Pelham*
# *Administrator's Office Memorandum*

To:         Village Physician William McCann, MD

From:       Richard Slingerland, Village Administrator    *Richard Slingerland*

Date:       July 30, 2004

Re:         Updated Review - Transitional Light Duty Assignments for P.O. Joseph DeMasi

In your review and examination of the aforementioned employee, please answer the following questions:

| # | Question | Yes | No | |
|---|----------|-----|-----|---|
| 1 | Is the officer in question physically capable of performing front desk duty in uniform – answering phones, dispatching police calls, monitoring but not having any physical contact with prisoners, computer record entry, interacting with the public through a glass partition, and other related duties? | | √ | WJM |
| 2 | Is the officer in question physically capable of answering phones (back office duty, Chief's Office, Detective's Office)? | √ | | |
| 3 | Is the officer in question physically capable of filing/light typing/paperwork? | √ | | |
| 4 | Is the officer in question physically capable of looking in a vehicle trunk and checking vehicles daily to ensure proper and functioning equipment and kits (flares, air bottles, working radios, etc.)? | | √ | WJM |
| 5 | Is the officer in question physically capable of performing grant research opportunities for the Police Department by paperwork and computer research? | √ | | |
| 6 | Is the officer in question physically capable of performing research and writing to prepare and maintain a coordinated Emergency Preparedness plan, which the Village is now working on with the Town, Pelham Manor and the Schools? | √ | | |
| 7 | Is the officer in question physically capable of performing Police Planning (paperwork, as appropriate)? | √ | | |
| 8 | Is the officer in question physically capable of performing office work to explore and work on assignments to get the Pelham Police Department accredited? (all paperwork and telephone duty). | √ | | |
| 9 | Is the officer in question physically capable of undergoing training to be certified on a decibel meter to take decibel readings in the field? | √ | | |
| 10 | Is the officer in question physically capable of standing for up to two hours at a time to assist with school crossings? | | √ | WJM |
| 11 | Is the officer in question physically capable of sitting in a vehicle or on a chair to take traffic and pedestrian counts and perform traffic surveillance? | | √ | WJM |

We propose these transitional light duty assignments, on a case-by-case basis, to continue until they are cleared to return to full duty.

The officers will be on assignment or phone-duty assignment as described, in uniform, and will be specifically directed by the Village not to become involved in any hazardous-duty (subduing a prisoner) or heavy physical work situation. Performing such work contrary to the Village's order would be construed as insubordination.

✱ cc:    P.O. DeMasi
         PBA President Rich Vasami
         Marge Growick, PERMA
         Ernest Stolzer, Esq.

✱ *See attached recent MRI report (8-27-04)*

WILLIAM A. UNIS, M.D., P.C.
77 PONDFIELD ROAD
BRONXVILLE, NEW YORK 10708
TELEPHONE (914) 793-0153
FAX (914) 793-7431

July 22, 2004

RE: DEMASI, JOSEPH

To Whom It May Concern:

The above patient is still quite symptomatic. He has continued pain in the low back with radiation towards the right sacroiliac area, buttock, and posterior thigh. Symptoms are made worse with standing or sitting for more than an hour. He cannot lift more than 25 pounds without significant pain in the above mentioned areas. He has loss of motion in all planes of the low back. He has marked tenderness in the right sacroiliac joint. He has straight leg raising on the right to 60 degrees. The right knee reflex is depressed. He has been on light duty since January of this year and has had continued symptoms. I do not feel that he will be able to do any continued sedentary type work because of these chronic problems. He has been taking Ultracet and occasionally Ambien, and anti-inflammatory medications. He will continue the present regimen and will continue on light duty.

Due to the patient's current condition prolonged sitting or standing (for more than an hour) may cause severe discomfort and the patient should be permitted to leave work if this occurs.

If you have any questions, please do not hesitate to contact my office at (914) 793-0999.

Thank you,

William A. Unis, M.D.

WU:jcd

**85**

### Exhibit Q to Slingerland Affidavit –
### Chief Joseph Benefico's Directive, dated February 2, 2005
### [pp. 85-88]



Michael J. Clain
Mayor

Richard Slingerland
Administrator

February 2, 2005

Joseph DeMasi
17 LaMesa Avenue
Eastchester, NY 10709

Re:    Return to work order on a light transitional duty basis for Wednesday, February 9, 2005

Dear Mr. DeMasi:

You are directed to report to work at 9 a.m. on Wednesday, February 9, 2005, to work a full eight (8) hour tour of light transitional duty. Your hours of work will be 9 a.m. to 5 p.m. from Monday to Friday.

You will be assigned to light transitional duty, which may include a Dual Desk Duty assignment as described in the attached Light/Transitional Duty Procedure Order Dated November 22, 2004. Such assignment is consistent with your physical status as described by Dr. Michael Panio in his opinion previously provided to the Village, enclosed with this letter.

You are to report to work in a dress-casual uniform per department policy, except you are not to wear a gunbelt or carry your weapon.

Neither you or your doctor have provided medical evidence that you are unable to work a full eight-hour tour of light transitional duty. If you leave before the end of your tour, you will not be paid for time not worked.

We look forward to your continued attendance at work during your transition.

Sincerely,

Joseph Benefico
Chief of Police

Richard Slingerland
Village Administrator

cc:    Ernest Stolzer, Esq.

**86**

## PELHAM POLICE DEPARTMENT
## PROCEDURE ORDER

SUBJECT: Light/Transitional Duty
Effective: 11/22/04                                Page 1

---

I.        PURPOSE

To provide a position within the Police Department that allows officers who are
out of work due to injury or illness compensable under §207-c of the General
Municipal Law to transition back to work in a capacity that does not exceed
their physical abilities in a way that does not pose a danger to themselves, their
fellow officers and the general public during this transition period.

II.        POLICY

Light Duty/Transitional Duty will be a work assignment that is less than full
duty but is within, and consistent with, the injured officer's physical status. The
Chief of Police will place officers who are to work Light/Transitional Duty in an
assignment. Light Duty/Transitional Duty assignments, by their nature, can
change over time as circumstances dictate, and the Police Department reserves
its right to modify such assignments consistent with the officer's physical status.

A Light Duty/Transitional Duty assignment can include, but is not limited to,
one or more of the following:

  Solo Desk Duty-where the officer is physically capable of working the Police
desk, on his own, and can perform all the functions of the desk in a safe and
efficient manner.

  Dual Desk Duty-similar to the above assignment, but the officer will be
working with another officer, who is not also on a light/transitional assignment.
In this capacity, where the light duty officer has a disability preventing the
performance of one or more of the functions of the desk, such as prisoner
handling or monitoring, the light duty officer will be instructed to refrain from
dealing with prisoners. In addition, other officers will be instructed not to call
on this officer for assistance requiring physical interaction with a prisoner or a
member of the public. Additionally, the light duty officer will remain behind the
Plexiglas partition at all times and will not have direct physical contact with
prisoners or the general public.

  Back office assignments-are assignments that the officer performs away from
the police desk and the officer will not have any contact with the public, or
prisoners for his safety and the safety of all others.

ERIC K. ZITZMANN, M.D.
MICHAEL W. PANIO, M.D.
LOUIS F. McINTYRE, M.D.
KENNETH D. PALMER, M.D.
SHEVAUN M. DOYLE, M.D.
RICHARD G. FREEMAN, M.D.
COLLEEN M. FAY, M.D.

PHONE    914-946-1010
FAX      914-946-1025

MICHAEL W. PANIO, M.D.
222 WESTCHESTER AVENUE – SUITE 101
WHITE PLAINS, N.Y. 10604

December 23, 2004

VILLAGE OF PELHAM
195 SPARKS AVEUNE
PELHAM, NEW YORK 10803

ATTN: RICHARD SLINGERLAND
      VILLAGE ADMINISTRATOR

RE:    DEMASI, JOSEPH
       Chart#: 68380



Dear Mr. Slingerland:

This gentleman states that he was on duty the evening of April 22, 2002 when he assisted a female driver whose car had stalled on a two-way street. Her car was facing northbound and it was adjacent to a line of parked cars. Slightly forward of her car was an empty space. The driver of the car was in the vehicle and the officer was attempting to push the vehicle into the empty space. Since the car was not operational there was no power steering and the front tires ended up hitting the curb. The officer then went to the front of the vehicle attempting to push the car out several feet so that she could then manually turn the wheels to the left and then move the car into the space with the officer once again behind the vehicle. With the officer pushing from the front of the car, another vehicle came along and hit the disabled car from behind throwing the officer backwards having him land on his low back and buttock as well as both hands. This was the genesis of the current event.

ON EXAM: The patient walks with a normal gait, which is quite quick. He can easily stand on tiptoes and heels. When he hops on the right leg he complains of some slight low back discomfort. Hopping on the left leg does not produce any low back discomfort. He can perform heel raises on a unilateral leg to the count of 10 on each side. He can perform full squats. Lateral bending of the lumbar spine to both the right and left causes slight discomfort. He has full rotation to the right and left. Extension is limited to a considerable degree. Forward flexion is possible only fingertips to upper calves. In the sitting position with the patient's feet on my knees, while I am sitting on an examining stool, he achieves almost 80 degrees worth of angulation between upper torso and both lower extremities. He is comfortable in this position. In this position, I have determined that his dorsalis pedis pulses are 2+ and his posterior tibial pulses are 3+. With the knees bent to 90 degrees and relaxed, his ankle reflexes are 1+ and his knee reflexes even with augmentation are 0 bilaterally.

The patient has considerable discrepancy in muscle testing in that he gives way in a ratchet type fashion where he will apply pressure and then relax, apply pressure, and relax against my steady resistance. This is true of anterior tib, extensor halluses, and extensor digitorum and foot flexors. There is a significant discrepancy in that I can hold his plantar flexors from pushing down in the sitting position, but yet a gentleman of this size can easily stand on one leg and raise his entire body weight up on one leg 10 times in a row indicating that he can push the foot into plantar flexion with relative ease. The patient can actively straight leg raise and does so only about 6 inches off the table top on either side and cannot bilaterally actively straight leg raise because of low back pain. Passive straight leg raising is performed by first flexing the hip and he can get to about 95 degrees both sides, and then at 90 degrees attempting to extend the knee. I can achieve full leg extension minus about 30 degrees bilaterally indicating significant hamstring tightness and this is indeed the case when I palpate his hamstring musculature. In this position, he does not complain of any low back pain or sciatic type distribution.

With the hip in 90 degrees of flexion and the knee in 90 degrees of flexion, his external rotation bilaterally is 30 degrees and his internal rotation is 20 degrees. Side lying hip abduction on the right side is strong and on the left side is slightly weak and he tends to give way. This is another discrepancy in that he does not have any evidence towards a Trendelenburg gait when ambulating.

In the prone position, he has no spinous process tenderness to palpation, but has some mild right-sided sacroiliac joint discomfort. His sciatic notch is nontender to palpation.

The skin of both lower extremities is warm, dry and intact. There are no palpable lymph nodes around either knee.

**OPINION:** This gentleman shows multiple inconsistencies on his physical exam and a true evaluation of his performance cannot be achieved today by this examination. In request to questions A, B, C, D, E, F and G, this patient is able to perform A through E for a full 40-hour workweek. For question letter F, the patient is physical capable of driving a vehicle to deliver mail or packages not exceeding two pounds in weight, but I would not have him in uniform, nor would I have him carry a weapon. Letter G has been answered as part of letter F. Hopefully this information will be of some assistance to you.

Sincerely,

Michael W. Panio, M.D.
MWP:lb

**89**

**Exhibit R to Slingerland Affidavit –**
**Dr. William A. Unis' Medical Report, dated February 11, 2005**

FROM : PELHAM POLICE DEPARTMENT        PHONE NO. : 914 738 1371        Mar. 14 2005 11:37AM P1

WILLIAM A. UNIS, M.D., P.C.
77 PONDFIELD ROAD
BRONXVILLE, NEW YORK 10708

TELEPHONE (914) 793-0153
FAX (914) 793-7431

February 11, 2005

RE: DEMASI, JOSEPH

To Whom It May Concern:

The patient has been on light duty since the beginning of the year. Symptoms persist mainly on the right side of the low back with radiation to the sacroiliac area, buttock, and outer thigh. Sitting and standing for a long period of time exacerbates the symptoms. He has had one epidural injection and this has not helped. I do not see him returning to full duty as a police officer. He will remain on light duty and will return to the office in a month. A prescription was given for Darvocet N-100 for pain relief. The patient's original injury was on April 22, 2002 and was struck by another vehicle. Initially he was followed by Dr. Kirschenbaum. He has loss of motion in the low back and still has some straight leg raising on the right. He has tenderness in the right sacroiliac joint. No changes are noted in his physical examination. He will return to the office in a month.

If you have any questions, please do not hesitate to contact my office at (914) 793-0999.

Thank you,

*William Unis*

William A. Unis, M.D.

WU:jcd

Exhibit S to Slingerland Affidavit –
**Dr. William A. Unis' Medical Report, dated March 28, 2005**

PAGE 01

FROM : PELHAM POLICE DEPARTMENT        PHONE NO. : 914 738 1371        Mar. 31 2005 09:58AM P1

WILLIAM A. UNIS, M.D., P.C.
77 PONDFIELD ROAD
BRONXVILLE, NEW YORK 10708

TELEPHONE (914) 793-0153
FAX (914) 793-7431

DATE:        March 28, 2005

TO:          NYS Retirement System

RE:          JOSEPH DEMASI

RECEIVED
3-31-2005

To Whom It May Concern:

The patient has had no change in the above symptoms. He continues to have low back pain with radiation into the right buttock and posterior thigh. Symptoms are worse with any prolonged sitting or standing. He has significant loss of mobility of the low back. The right knee reflex is still depressed. No gross weakness is noted. The patient cannot lift more than 25 pounds without significant pain in the low back, etc. He has had one epidural injection and this proved unsuccessful. No guarantees can be given on a surgical procedure and he is extremely apprehensive of any type of surgical procedure to the low back. If symptoms worsen while on light duty I have given him consent to return home, etc. Sitting or standing for more than an hour would be counter productive. He has been taking Darvocet and a prescription was given for Ambien. He will return to the office in six weeks.

If you have any questions, please do not hesitate to contact my office at (914) 793-0999.

Thank you,

William Unis

William A. Unis, M.D.

WU:jcd